UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 05-10195 |
| CHARLES S. BUCCI, | ) | |
|    Debtor. | ) | Chapter 7 |
| | ) | |
| BOARD OF TRUSTEES OF THE OHIO | ) | |
| CARPENTERS' PENSION FUND ON | ) | Adversary Proceeding No. 05-1180 |
| BEHALF OF THE OHIO | ) | |
| CARPENTERS' PENSION FUND, *et al.*, | ) | Judge Arthur I. Harris |
|    Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES S. BUCCI, | ) | |
|    Defendant. | ) | |

MEMORANDUM OF OPINION

Before the Court are cross-motions for summary judgment. At issue is the dischargeability of debts arising out of the debtor-defendant's alleged breach of a collective bargaining agreement requiring employers to fund various employee pension and fringe benefit trust funds through wage withholdings and employer contributions. For the reasons that follow, the Court finds that the debt for unpaid employer contributions is dischargeable, and the debt for unpaid wage withholdings is nondischargeable. Thus, the defendant's partial motion for summary judgment is granted, and plaintiffs' cross-motion for summary judgment is granted in part and denied in part.

## JURISDICTION

Dischargeability determinations are core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2005, debtor Charles Bucci filed a Chapter 7 petition. On April 11, 2005, several ERISA-qualified pension and fringe benefit trust funds (Trust Funds), their trustees, and union organizations (collectively "plaintiffs") filed this adversary complaint. In the complaint, plaintiffs allege Bucci should be treated as the alter ego of Floors By Bucci, Inc. because Bucci was the sole shareholder, director, and officer of the company and failed to separate his personal finances from the company finances. The complaint further alleges that Floors by Bucci, Inc., and therefore Bucci, breached a collective bargaining agreement (CBA) between the local carpenters union and various employer groups.

Attached to the complaint is an agreement that Bucci signed in February 2003 as president of Floors By Bucci, Inc. obligating his company to abide by the CBA. The CBA is also attached, and Appendix D of the CBA, incorporated through Article XXV, outlines the required wages and benefits for carpenter

employees. Specifically, Appendix D lists (1) the taxable hourly wage rate paid to the employee and (2) the non-taxable hourly wage rate that the employer contributes to the various Trust Funds, *i.e.*, pension, hospitalization, and annuity funds ("employer contributions"). Appendix D further indicates that the employer shall deduct three percent from the employee's taxable hourly wage rate for union dues and $1 per hour for vacation benefits ("wage withholdings"). Article IV of the CBA requires that the wage withholdings and employer contributions must be indicated on the employee's wage statement attached to each paycheck. All of the wage withholdings and employer contributions must be sent to the employees' union representative by a specific date or else additional fines accrue. The complaint and attached documents do not indicate whether the employer is actually required to segregate any monies prior to remitting them to the union representative.

Although his initial Answer denies most of the complaint's allegations, Bucci, in his additional briefing, has not challenged the alter ego claim or the claim that the wage withholdings and employer contributions are due and owing. In fact, Bucci's schedule F lists an undisputed $99,000 debt to the union. This scheduled debt closely matches the plaintiffs' complaint. The complaint states that, for the time period from March 2003 to May 2004, Bucci owes close to

3

$86,000 in employer contributions, almost $9,000 in vacation wage withholdings, and more than $4,600 in union wage withholdings. The complaint further requests an accounting to determine if more debt has accrued since June 2004. Plaintiffs' complaint, however, does not ask the Court to liquidate the amount of the debt; instead, the complaint asks the Court to find that all the debt arising from failure to remit the wage withholdings and employer contributions is nondischargeable under section 523(a)(4) as debt from defalcation and/or embezzlement.

On October 25, 2005, Bucci filed a motion for partial summary judgment (Docket #15) asserting that the debt arising from the failure to pay the employer contributions is dischargeable. On November 23, 2005, plaintiffs filed a cross-motion for summary judgment as to all claims (Docket #19). Attached to plaintiffs' cross-motion are several of the trust agreements that establish and govern the Trust Funds. The trust agreements provide that the "trust fund" includes "all funds received or due to be received . . . in the form of Employer Contributions (including delinquent Employer Contributions)."

All reply and response briefs have now been filed (Dockets #20 & #21), and the Court is ready to rule.

4

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Absent such evidence from the nonmoving party in a motion for summary

5

judgment, the Court need not excavate the entire record to determine if any of the available evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.; accord In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 735 (6th Cir. 2001) (citing several cases reaching same conclusion).

## DISCUSSION

This adversary proceeding involves a factual scenario all too familiar to bankruptcy judges. A small business with financial difficulties cannot meet its contractual obligations to creditors and employees. Funds the employer itself is obligated to contribute for employee benefits or pensions go unpaid. Additional funds the employer is obligated to withhold from employee paychecks for employee benefits or union dues are withheld from the employee but are not paid as required. Rather, the employer uses the funds withheld from the employees' paychecks to pay other creditors in an effort to keep the business afloat. When the business fails, the owner/president files for bankruptcy, and the former employees or plan trustees bring an adversary proceeding for a determination that the debts owed them are nondischargeable under 11 U.S.C. § 523(a)(4).

Unlike the situation where an employer fails to pay trust fund taxes or employee tax withholdings to the IRS, which is subject to a specific nondischargeability provision, see 11 U.S.C. § 523(a)(1)(A), the nondischargeability of unpaid wage withholdings and employer contributions is less clear. The outcome may well depend upon the specific context, such as the terms of the collective bargaining agreement or other contracts or whether the debtor was a trustee of the employee benefit plan. Nor is it clear that the debtor

7

being a fiduciary for purposes of ERISA or even being liable for damages under ERISA is enough to make the debt nondischargeable under the Bankruptcy Code. In analyzing the specific situation presented by this adversary proceeding, the Court is guided by the text of subsection 523(a)(4) and applicable case law from the Sixth Circuit.

*The Employer Contributions Debt Is Dischargeable Because It Is Not Debt for Defalcation or Embezzlement*

Section 523 of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
. . . .
    (4) for . . . defalcation while acting in a fiduciary capacity, embezzlement . . . .

A defalcation under subsection 523(a)(4) requires: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak*, 397 F.3d 386, 390 (6th Cir. 2005) (citing *In re Garver*, 116 F.3d 176, 179 (6th Cir. 1997)). For purposes of subsection 523(a)(4), a defalcation is limited to "only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor. Defalcation then occurs through the misappropriations or failure to properly account for *those* trust funds." *Id.* at 390 (quoting *In re Garver*, 397 F.3d at 180). In order to establish the existence of an express or technical trust, the creditor must

8

show: "(1) an intent to create a trust; (2) a trustee; (3) a trust *res*; and (4) a definite beneficiary." *Id.* at 391.

Defendant does not dispute the allegation that he is the alter ego for his corporation and therefore is contractually liable for the unpaid employer contributions. Nor does he dispute that he failed to remit those contributions as required under the CBA and is thus in default. Bucci does, however, assert that the employer contributions debt is dischargeable because the obligation to make the contributions was merely contractual in nature; Bucci asserts that neither he nor his business acted as a trustee over the employer contributions.

The Court agrees and finds that, pursuant to *Blaszak*, the employer contributions debt is not the result of a defalcation. An express or technical trust did not exist because neither Bucci nor his business acted as a trustee. Bucci and his business had a contractual obligation to pay the employer contributions. Once the employer contributions became delinquent, the trust agreements governing the Trust Funds provided that the debt and breach of contract claim became an asset of the Trust Funds: the "trust fund" includes "all funds . . . due to be received . . . (including delinquent Employer Contributions)." But it is not enough for the employer contributions debt to become an asset of a trust. *Blaszak* requires that the parties have the intent that Bucci or his business act as trustee. Nothing in the

9

record indicates that Bucci was required to hold the employer contributions in trust either before or after they became due and owing. The record evidences only a contractual obligation to pay but no intent to act as a trustee of unpaid contributions or as a trustee of the Trust Funds. *See also In re Luna*, 406 F.3d 1192 (10th Cir. 2005) (finding employer's contractual obligation to pay contributions is asset of ERISA-qualified trust fund but employer is not fiduciary of the monies owed); *Hunter v. Philpott*, 373 F3d 873, 875 (8th Cir. 2004) ("We are not satisfied that the simple determination than an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4)."); *In re Engleman*, 271 B.R. 366, 369-71 (Bankr. W.D. Mo. 2001) ("[Debtor] admits he owes a debt . . . for the monies he failed to contribute. . . . A debtor/creditor relationship, without more, does not give rise to a fiduciary relationship."); *Bowman v. Hollander*, No. 89-0500, 1992 WL 373172 (N.D. Ohio May 25, 1992) ("[I]n the absence of an express trust, a fiduciary obligation to pay severance benefits under ERISA is insufficient to trigger the application of § 523(a)(4).").

Most of the cases that plaintiffs cite in support of their nondischargeability claim are distinguishable because they involved wage withholdings, not employer contributions. *See, e.g., Eavenson v. Ramey*, 243 B.R. 160, 165-67 (N.D. Ga. 1999) (employer self-insured employees and withheld wages to fund the health

10

05-01180-aih    Doc 25    FILED 03/24/06    ENTERED 03/24/06 12:45:26    Page 10 of 16

care plan but then failed to pay medical claims as required); *In re Gunter*, 304 B.R. 458 (Bankr. D. Colo. 2003) (wage withholdings designated for ERISA-qualified fringe benefit funds); *In re Coleman*, 231 B.R. 393, 396 (Bankr. S.D. Ga. 1999) (found defalcation where "employee contributions withheld and . . . misappropriated" and distinguished *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710 (11th Cir.1987), where no defalcation found because "funds in question were the corporation's contributions which were diverted to cover corporate obligations"); *Matter of Musgrove*, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (ex-employee sent monthly funds to ex-employer for extended health insurance plan but ex-employer diverted funds for own use). Although a district court within the Sixth Circuit has found an employer and its president liable for unpaid employer contributions as a fiduciary under ERISA, *see Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d 794, 803-07 (E.D. Mich. 2004), that case did not involve a determination of nondischargeability under the Bankruptcy Code. Moreover, unlike the district court in *McGuire Steel*, this Court need not decide whether Bucci is liable for damages under ERISA for unpaid employer contributions. This is not an action for damages under ERISA, and, in any event, Bucci concedes his own liability for the unpaid wage withholdings and employer

contributions.

Under the Sixth Circuit's defalcation analysis in *Blaszak*, it is not enough to determine that Bucci is a fiduciary within the meaning of ERISA. Certainly, fiduciaries within the meaning of ERISA can be liable for nondischargeable debts; however, for purposes of subsection 523(a)(4), a defalcation is limited to "only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor." *In re Blaszak*, 397 F.3d at 391 (quoting *In re Garver*, 397 F.3d at 180); *cf. Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 616-17 (6th Cir. 2003) (explaining that ERISA fiduciary is not equivalent of common law trustee). Because there is nothing in the record to show that Bucci was ever a trustee over the Trust Funds or that he was obligated to hold the employer contributions in trust, the debt for unpaid employer contributions is not a debt for defalcation within the meaning of subsection 523(a)(4).

Nor do the unpaid employer contributions meet the elements of a debt for embezzlement. Federal law defines "embezzlement" under subsection 523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (quoting *In re Carlton*, 26 B.R. 202, 205

12

(Bankr. M.D. Tenn. 1982)). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.*

The plaintiffs have failed to provide any evidence suggesting that the employer contributions were property of another person. No employee or Trust Funds property was entrusted to Bucci or his business. Bucci and his business had a contractual obligation to pay the employer contributions. Under the terms of the trust agreements, once Bucci failed to meet his contractual obligation, the debt and the breach of contract claim became an asset of the Trust Funds. But the failure to pay a contractual obligation to the Trust Funds is not embezzlement. *See In re Schultz*, 46 B.R. 880, 889-90 (Bankr. Nev. 1985) (failure to make payments for fringe benefits to union trust funds pursuant to collective bargaining agreement is not embezzlement). The Trust Funds may have a breach of contract claim for the unpaid employer contributions, but the record does not establish an entrustment of the unpaid employer contributions. Therefore, defendant's motion for partial summary judgment is granted, and the plaintiffs' cross-motion as to the employer contributions is denied. The debt for unpaid employer contributions is dischargeable.

*The Wage Withholdings Debt Is Nondischargeable as Debt for Defalcation*

Pursuant to *Blaszak*, the Court reaches the opposite result for the unpaid wage withholdings, finding the debt nondischargeable due to the debtor's defalcation. Again, the material facts are not in dispute. Bucci does not dispute the alter ego claim, nor does he dispute that funds were withheld from employee paychecks for the union dues and vacation benefits but never remitted to the union representative as required. The CBA required the employer to disclose, on the employee wage statement attached to the paycheck, the amount of wages being withheld by the employer, and Bucci does not dispute that he issued the wage statements with the representation that he was holding his employees' wages.

These facts support the finding of the express trust agreement required under *Blaszak*. The parties created their express trust agreement through the CBA. Pursuant to the CBA, once the paycheck is issued, the withheld wages become property of the employee. The employer expresses the intent to create a trust by issuing the wage statement attached to the paycheck. The wage statement informs the employee that the employer is withholding specific sums from the employee's paycheck. The employer and employee know that, pursuant to the CBA, the funds are being held for employees and will be turned over to a third party. Thus, the withheld wages are the trust *res*, and the employer is holding those wages in trust

14

for the third-party beneficiaries, the Trust Funds. Bucci breached the express trust when he failed to pay over the *res* that he withheld from the employee paychecks. Due to the debtor's defalcation, the unpaid wage withholdings are nondischargeable pursuant to subsection 523(a)(4).

> When companies deduct contributions from employee paychecks, those amounts are not loans to the company that it can use for any purpose until the loan becomes due. Those contributions are monies that have already been paid to the employees as compensation. The company is acting merely as a steward; holding the plan participants' property until the assets can be segregated into a separate fund. The company may not dip into the plan assets to use for its own purposes any more than it could dip into the private bank accounts of its employees to fund its shortfalls; once the contributions are withheld, the money no longer belongs to the company.

*Bannistor v. Ullman*, 287 F.3d 394, 411 n.1 (5th Cir. 2002) (Garza, J., specially concurring); *accord In re Lexington Healthcare Group, Inc.*, 335 B.R. 570 (Bankr. D. Del. 2005) (in turnover action, employer found to be trustee of wages withheld and designated for 401(k)); *cf. Eavenson*, 243 B.R. at 166-67 (finding defalcation where debtor breached "technical trust" by breaching fiduciary duties established by ERISA); *In re Gunter*, 304 B.R. at 460-62 (same); *In re Coleman*, 231 B.R. at 395-97 (same); *Matter of Musgrove*, 187 B.R. at 813-15 (same).

The Court does not reach the embezzlement claim regarding the wage withholdings, as this Court has already found the debt nondischargeable as a defalcation under subsection 523(a)(4).

15

05-01180-aih    Doc 25    FILED 03/24/06    ENTERED 03/24/06 12:45:26    Page 15 of 16

The Court believes this resolves all claims. For example, the Court has not addressed plaintiffs' request for an accounting because the Court does not understand the adversary complaint to be seeking a money judgment. To the extent that any party believes that other claims or issues need further resolution, the party should move to alter or amend the judgment under Rule 9023 within ten days.

## CONCLUSION

For the reasons stated above, defendant's partial motion for summary judgment is granted, and plaintiffs' cross-motion for summary judgment is granted in part and denied in part. The debt for unpaid employer contributions is dischargeable, and the debt for unpaid wage withholdings is nondischargeable.

IT IS SO ORDERED.

_____
Arthur I. Harris
United States Bankruptcy Judge